## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| BRICKELL CHIROPRACTIC CENTER, INC., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| | ) | No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **CLASS ACTION** |
| DIAGNOSTIC CENTER OF AMERICA INC, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Brickell Chiropractic Center, Inc. ("Plaintiff"), brings this action on behalf of itself and a class of all other persons similarly situated and, except as to those allegations pertaining to Plaintiff or its attorneys, alleges the following upon information and belief against defendant Diagnostic Center of America Inc ("Defendant" or "DCA"):

## PRELIMINARY STATEMENT

1.     On behalf of itself and all other similarly situated, Plaintiff alleges claims and seeks statutory damages and other relief arising from Defendant's violations of the Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA").

2.     The TCPA prohibits unsolicited advertising by facsimile.

3.     To date, Defendant has successfully transmitted at least four unsolicited advertisements to Plaintiff by facsimile.

4.      True and correct copies of four unsolicited advertisements received and printed by Plaintiff's facsimile machine are attached as <u>Exhibits A-D</u>.

5.      Each of these four facsimiles advertised the commercial availability or quality of property, goods, or services available from DCA.

6.      Defendant did not have Plaintiff's prior express invitation or permission to send any advertisement by fax.

7.      Plaintiff had no "established business relationship" ("EBR") with Defendant.

8.      The faxes did not have the opt-out notice required by 47 U.S.C. § 227, so any EBR between the parties would be irrelevant in this action.

9.      The TCPA creates a private right of action and provides minimum statutory damages of $500 per violation. If the Court finds a violation was willful or knowing, it can increase the damages up to three times, or $1,500 per violation. The Court can also grant injunctive relief to protect against future violations. 47 U.S.C. § 227(b)(3).

10.      Unsolicited facsimiles that are successfully transmitted cause concrete damage to their recipients, including wasting the recipient's valuable time, interrupting the recipient's privacy, using or tying up telephone lines, preventing fax machines from receiving authorized faxes, preventing the use of fax machines from sending outgoing faxes, wasting the recipient's paper and ink toner printing the sender's advertising material, causing undue wear and tear on fax machines, requiring additional labor to attempt to discern the source and purpose of the

unsolicited message, or otherwise using the recipient's valuable and limited resources to deliver Defendant's advertisement.

11.    On behalf of itself and all others similarly situated, Plaintiff seeks statutory damages and other relief for each of Defendant's violations of the TCPA occurring during the statutory limitations period commencing four years prior to the filing of this action and continuing until the Court orders notice to the class.

## PARTIES, JURISDICTION, AND VENUE

12.    Plaintiff, Brickell Chiropractic Center, Inc., is a Florida Profit Corporation, with its principal place of business, offering the chiropractic practice of Dr. Keith Brickell, located at 5975 N. Federal Highway, #121, Fort Lauderdale, FL 33308. Plaintiff is in Broward County, FL.

13.    Defendant, Diagnostic Center of America Inc, is a Florida Profit Corporation with its principal place of business located at 3383 NW 7 St, #313, Miami, FL 33125. DCA's registered agent is Marcelino Dominguez Valdes, located at 3383 NW 7 St, #313, Miami, FL 33125. Although Defendant is in Miami-Dade County, FL, its radiological facilities are in Palm Beach County, FL.

14.    The Court has subject matter jurisdiction for the TCPA claim under 28 U.S.C. § 1331 and 47 U.S.C. § 227 and supplemental jurisdiction for the conversion claim under 28 U.S.C. § 1367

15.    Personal jurisdiction exists over DCA in Florida because it is registered to do business in the State, has its principal place of business in the State, and it has

committed tortious acts in the State by sending unlawful fax advertisements to Plaintiff, a Florida resident.

16.     Venue is proper in the Southern District of Florida, because DCA's principal place of business is within this District, it committed statutory torts within this District, and a significant portion of the events took place here.

## FACTS

17.     For a fee, Defendant offers diagnostic and other radiological services to patients and their doctors in Palm Beach County, Florida.

18.     On October 29, 2018, celebrating "25 years and beyond," DCA opened its sixth diagnostic center, at which time all six locations were in Palm-Beach County.

19.     "Focused on excellence, committed to patient care," DCA was the distinguished recipient of an official designation from the Diagnostic Imaging Center of Excellence, ACR (American College of Radiology), which is awarded to less than 1% of all imaging facilities in the USA.

20.     DCA's facilities included:

- 3T MRI Siemens Vida - 64 channel with Biomatrix technology
- 128 Slice CT Siemens go.Top - the only one in South Florida
- PET/CT Siemens Biograph Horizon - smaller crystals for better image quality
- Hologic 3D Mammography - with SmartCurve Breast Stabilization System
- Samsung X-ray - excellent image quality with 51% dose reduction
- Samsung Ultrasound - novel technology for higher level of diagnostic confidence
- Also available: nuclear medicine, STAT appointments, labs onsite
- 30+ sub-specialized, board certified and fellowship radiologists.

21.     Despite what Humana and possibly others might have said, as of April 6, 2021, "DCA is Open and Here for You."

22.      For center schedules, ask a scheduling specialist at 561.496.6935.

23.     DCA enforced strict Covid-19 prescreening criteria.

24.     For more screening info, and information about DCA's business offerings, one could visit DCAmedical.com.

25.     Defendant announced all these things by fax. *See* <u>Exhibits A-D</u>.

26.     Plaintiff did not have an "established business relationship" with Defendant and its faxes contained no opt-out notice.

27.     Defendant did not have Plaintiff's prior express invitation or permission to send any advertisement by fax.

28.     As part of its business operations, Plaintiff sends and receives documents by facsimile.

29.     Plaintiff uses its fax machine to send and receive urgent, important, confidential information, including pictures and images, but not advertising material.

30.     Plaintiff unwillingly receives unsolicited advertisements on its fax machine, but understands that the TCPA prohibits DCA and every other person from sending advertising material by fax without Plaintiff's prior express invitation or permission, which Plaintiff did not grant.

31.     Plaintiff does not advertise by fax.

32.     To date, Plaintiff's facsimile machine has received and printed at least four unsolicited advertisements sent by or on behalf of DCA.

33.     Attached as Exhibit A is a true and correct copy of a one-page advertisement that Defendant successfully sent or caused to be successfully sent by fax to Plaintiff on October 25, 2018.

34.     Attached as Exhibit B is a true and correct copy of a one-page advertisement that Defendant successfully sent or caused to be successfully sent by fax to Plaintiff on October 26, 2018.

35.     Attached as Exhibit C is a true and correct copy of a one-page advertisement that Defendant successfully sent or caused to be successfully sent by fax to Plaintiff on October 29, 2018.

36.     Attached as Exhibit D is a true and correct copy of a one-page advertisement that Defendant successfully sent or caused to be successfully sent by fax to Plaintiff on April 6, 2020.

37.     DCA's role as the sender of these unsolicited facsimile advertisements is announced in the headers of the Faxes: "FRM: DCA 561-994-6333". Exhibits A-D.

38.     Upon information and belief, Plaintiff alleges that DCA sent Exhibits A-D and any other unsolicited advertisements by facsimile to more than 40 persons or entities. This allegation is based, in part, on the fact that Exhibits A-D are generic form templates, with graphics and trademarks and no personalized information for the intended recipient. The header of the faxes show Defendant sent the fax to a computerized list of targets, predictably lengthy. Sending advertisements in bulk fax

broadcasts is an inexpensive way to reach a wide target audience, far less expensive than direct mail, tv, radio, telephone calls, and in-person visits.

39. Plaintiff and the other class members owe no obligation to protect their fax machines from Defendant's unlawful facsimiles. Their fax machines are ready to send or receive their urgent business communications, or private communications about patients' medical needs, not to receive Defendant's unsolicited advertisements.

## CLASS REPRESENTATION ALLEGATIONS

40. Plaintiff brings this action as a class action on behalf of itself and a class of other persons and entities similarly situated, and initially defined as follows:

> All persons and entities successfully sent one or more unsolicited advertisements by facsimile from Diagnostic Center of America without the opt-out notice required by 47 U.S.C. § 227(b)(2)(D).

Excluded from the class are DCA, any entity in which DCA has a controlling interest, DCA's employees, officers, and directors, DCA's legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, and his or her family.

41. If Defendant's fax advertising efforts involved other, substantially-similar advertisements to the same or similar target lists, then Plaintiff intends to argue to include those claims in the resolution of this litigation and intends to locate those advertisements in discovery. *See* Exhibit E, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

42. This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23. This action satisfies Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or

varying adjudications under Rule 23(b)(1)(A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23(b)(3).

**Numerosity/Impracticality of Joinder**

43.     On information and belief, the class includes more than 40 persons and, thus, is so numerous that joinder of all members is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but Plaintiff intends to obtain them in discovery from DCA's records or the records of third parties.

**Commonality and Predominance**

44.     There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.     Whether DCA sent unsolicited advertisements by fax;

b.     Whether DCA's fax contained any material advertising the commercial availability or quality of any property, goods, or services;

c.     The manner and method DCA used to compile or obtain the target lists to which it sent facsimile transmissions;

d.      Whether DCA faxed advertisements without possessing prior express invitation or permission of the intended recipient;

e.      Whether DCA's facsimiles contained an opt-out notice that complied with the TCPA's requirements, because otherwise any "established business relationship" between Defendant and an unnamed class member is completely irrelevant here;

f.      Whether Plaintiff and the other class members are entitled to statutory damages;

g.      Whether the Court should treble the statutory damages; and

h.      Whether DCA should be enjoined from sending unsolicited advertisements by facsimile in the future without first ensuring the Court that it has adopted measures and mechanisms to prevent unlawful fax advertising.

## Typicality of Claims

45.     Plaintiff's claims are typical of the claims of the other class members because all were injured by the same wrongful practices. Plaintiff and the members of the class received DCA's unsolicited advertisements by facsimile. If Plaintiff prevails on its claims, then the putative class members will prevail as well.

## Adequacy of Representation

46.     Plaintiff is an adequate representative of the class. Plaintiff's interests do not conflict with the interests of the class. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular,

and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

### A Class Action is the Superior Method of Adjudicating the Common Questions of Law or Fact that Predominate over Individual Questions

47.    A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. Class members do not have strong interests in individually controlling the prosecution of separate actions. There is no other litigation pending regarding fax advertisements from DCA. Management of these claims and their resolution as a class action will not be difficult.

### COUNT I

### TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

48.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

49.    Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons.

50.    The TCPA prohibits:

any person within the United States, or any person outside the United States if the recipient is within the United States—

* * *

**(C)** to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

**(i)** the unsolicited advertisement is from a sender with an established business relationship with the recipient;

**(ii)** the sender obtained the number of the telephone facsimile machine through--

**(I)** the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

**(II)** a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before July 9, 2005; and

**(iii)** the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E); ***

47 U.S.C. § 227 (b)(1)(C).

51.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227(a)(4).

52.    The TCPA provides a "private right of action" as follows:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State--

**(A)** an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

**(B)** an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

**(C)** both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

53.     In relevant part, the TCPA states that "[t]he [Federal Communications] Commission shall prescribe regulations to implement the requirements of this subsection ... in implementing the requirements of this subsection, the Commission shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if ... (i) the notice is clear and conspicuous ..." 47 U.S.C. § 227(b)(2)(D)(i).

54.     Additionally, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if ... (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful ..." 47 U.S.C. § 227(b)(2)(D)(ii). The shortest reasonable time has been determined to be thirty (30) days. 47 C.F.R. § 64.1200(a)(4)(iii)(B).

55.     The opt-out notice must also include "a domestic contact telephone and

12

facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice ..." 47 U.S.C. § 227(b)(2)(D)(iv).

56.    "A notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if ... (v) the telephone and facsimile machine numbers and the cost-free mechanism ... permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227(b)(2)(D)(v).

57.    The FCC's regulations pertaining to opt-out notices on unsolicited advertisements are set forth at 47 C.F.R. § 64.1200(a)(4)(iii).

58.    Exhibit A advertises the commercial availability or quality of Defendant's property, goods, or services.

59.    Defendant sent Exhibit A to Plaintiff by facsimile without Plaintiff's prior express invitation or permission.

60.    Exhibit A has no opt-out notice.

61.    Exhibit B advertises the commercial availability or quality of Defendant's property, goods, or services.

62.    Defendant sent Exhibit B to Plaintiff by facsimile without Plaintiff's prior express invitation or permission.

63.    Exhibit B has no opt-out notice.

64.    Exhibit C advertises the commercial availability or quality of Defendant's property, goods, or services.

65.    Defendant sent Exhibit C to Plaintiff by facsimile without Plaintiff's

prior express invitation or permission.

66.   Exhibit C has no opt-out notice.

67.   Exhibit D advertises the commercial availability or quality of Defendant's property, goods, or services.

68.   Defendant sent Exhibit D to Plaintiff by facsimile without Plaintiff's prior express invitation or permission.

69.   Exhibit D has no opt-out notice.

70.   Plaintiff intends to discover and include within this case all unsolicited advertisements Defendant sent by fax. *See* Exhibit I, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

71.   Defendant violated 47 U.S.C. § 227 *et seq*. by sending advertisements by fax to Plaintiff and the other class members without their prior express invitation or permission and, to the extent Defendant will contend it sent facsimiles based on an "established business relationship," by failing to include compliant opt-out notices on its unsolicited fax advertisements.

72.   Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material, and to provide the various cost-free means Congress required to be made available to do so. If senders do not clearly and conspicuously provide the opt-out content to the recipients and comply with these requests when made, then the recipients are unable to stop the burdens imposed by

this form of advertisement.

73.     The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if its actions were negligent.

74.     Defendant is liable because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, and/or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority, and ratification.

75.     Defendant knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendant or anybody else to send advertisements by facsimile and that Defendant's faxes either did not display the opt-out notice required by the TCPA (including the FCC's regulations), or displayed a non-compliant opt-out notice that did not have the required language or make available the means Congress intended to make such an opt-out request.

76.     Defendant's actions caused damages to Plaintiff and the other class members. Receiving Defendant's junk faxes caused most recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, the subject faxes used Plaintiff's and the class's fax machines, blocked the sending and receiving capacity of the machine, increased costs associated with operating and maintaining a fax machine, and wasted valuable time. Defendant's faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members

from the sending of the faxes occurred outside Defendant's premises.

77.     Even if DCA did not intend to cause damage to Plaintiff and the other class members, did not intend to use their paper and toner, did not intend to assume control of their fax machines by blocking their fax sending and receiving capacity, did not intend to violate their privacy, did not intend to waste the recipients' valuable time with DCA's advertisements, and did not intend to increase their costs associated with operating and maintaining a fax machine, those facts are irrelevant because the TCPA is a strict liability statute.

78.     The Court, in its discretion, can treble the statutory damages if the violation was knowing or willful and Plaintiff requests trebling. 47 U.S.C. § 227.

## COUNT II

### COMMON LAW CONVERSION

79.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

80.     Plaintiff brings Count II on behalf of itself and a class of similarly-situated persons and against Defendant.

81.     By sending numerous advertisements to their fax machines, Defendant improperly and unlawfully converted the class's fax machines to Defendant's own use. Where printed (as in Plaintiff's case), Defendant also improperly and unlawfully converted the class members' paper and toner to Defendant's own use. Defendant also converted Plaintiff's time to Defendant's own use, as it did with the valuable time of the other class members. Lastly, where received over a regular telephone line (as in Plaintiff's case) Defendant effectively took over Plaintiff and the other class members'

telephone lines while the numerous unsolicited facsimiles were transmitting and printing rendering them unable to use their fax machines for receiving authorized faxes or sending outgoing faxes.

82.     Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

83.     By sending them unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

84.     Defendant commandeered the fax machines of Plaintiff and the other class members and converted their fax machines to their own advertising and marketing tool by bombarding their fax machines with at least four unsolicited facsimile advertisements, at least three of which were successfully sent within a period of five days.

85.     Defendant knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

86.     Plaintiff and the other class members were deprived of one or more of the use of their fax machine, paper, toner, or other incremental cost, plus valuable time, only as a result of Defendant's unsolicited and unwanted facsimiles, which used, wasted, and diverted their fax machines to Defendant's improper use. Plaintiff and each class member suffered damages by receiving unsolicited faxes from Defendant.

87.     Defendant's unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendant's illegal faxes. Defendant knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff demands judgment in favor of itself and all others similarly situated and against DCA as follows:

A.      That the Court adjudge and decree that the present case may be properly maintained as a class action, certify a class, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.      That the Court award $500 in statutory damages for each of DCA's violations of the TCPA;

C.      That the Court treble the statutory damages to $1,500 per violation if it finds that DCA knowingly or willfully violated the TCPA;

D.      That the Court enter an injunction prohibiting DCA from sending any advertisement by fax without first demonstrating that it has obtained express invitation or permission to fax advertisements; and

E.      That the Court award costs, expenses and attorney fees on the conversion claim, and such further relief as the Court deems just and proper.

Respectfully submitted,

BRICKELL CHIROPRACTIC CENTER, INC., individually and on behalf of all similarly-situated persons,

By: /s/ Phillip A. Bock
        One of their attorneys

Phillip A. Bock (FL 93895)
BOCK HATCH & OPPENHEIM, LLC
820 W. 41st St., #305
Miami Beach, FL 33140
Telephone: 305-239-8726
Email: service@classlawyers.com